IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JOHNNY DAVIS                                                                                    PLAINTIFF

V.                                                                                    CASE NO. 2:11-CV-142-MTP

WEXFORD HEALTH SERVICES, ET AL.                                                DEFENDANTS

OPINION AND ORDER

This matter is before the Court on the Plaintiff's Motion for Summary Judgment [39] and the Defendants' Motion for Summary Judgment [43]. Both parties argue that no disputed material fact issues remain warranting the trial of this case and that summary judgment should be entered. Having considered the motions, case record, and applicable law, the Court finds that the Plaintiff's motion should be denied and that the Defendants' motion should be granted for the reasons stated below.

FACTUAL BACKGROUND

On July 15, 2011, Plaintiff Johnny Davis, proceeding *pro se* and *in forma pauperis*, filed his 42 U.S.C. § 1983 complaint in this Court alleging that Wexford Health Sources, Inc.[1] ("Wexford") and Dr. Ronald Woodall denied and/or delayed medical treatment to him and that they were deliberately indifferent to his serious medical needs. Dr. Woodall is employed by Wexford and provides medical services to inmates housed at prison facilities within the Mississippi Department of Corrections ("MDOC"). Davis's claims arise from events which took place while he was a post-conviction inmate at South Mississippi Correctional Institute

---

[1] The Plaintiff initially listed Wexford Health Services, Inc. as a defendant; however, the correct defendant is Wexford Health Sources, Inc. *See* Omnibus Order [34].

1

("SMCI"). For a short period during the times alleged, Davis was held at Wilkinson County Correctional Facility ("WCCF"). He seeks an award of compensatory damages for his pain and suffering.

By way of background, Davis claims that he has suffered from a chronic hernia condition since February 2008. Around that time, he was seen by Dr. Woodall who advised that the hernia was small in size. Doc. [43-3] at 12:22-13:12. Davis claims that when he continued experiencing pain from the hernia, he went to see Dr. Woodall again but that Dr. Woodall told him he would "do something" once the hernia grew larger. Doc. [43-3] at 13:13-17. In 2009, Davis was transferred to WCCF. While there, he was seen by a doctor, who recommended him to a doctor in McComb. Doc. [43-3] at 13:18-14:12. However, before Davis was seen by the other physician, he was transferred back to SMCI.

After Davis returned to SMCI, Dr. Woodall resumed treating him and gave him a hernia belt. Doc. [43-3] at 14:13-17. Davis wore the belt for a few months, but continued experiencing pain. He was prescribed medication, but claims that the medication did not improve his condition. Doc. [43-3] at 15:14-19. According to Davis, Dr. Woodall did not use alternate treatment on the hernia because it had not grown "big enough." Doc. [43-3] at 14:23-15:2. Davis unsuccessfully attempted to obtain relief pursuant to the MDOC Administrative Remedy Program ("ARP") and then filed the instant lawsuit.[2]

In this § 1983 action, Davis alleges that Dr. Woodall failed to properly treat his medical condition. The Plaintiff claims that Dr. Woodall should have ordered him to undergo surgery at

---

[2] At Plaintiff was advised through the ARP process that he had already been treated with a hernia belt and naprosyn medication for his "small 2 cm reducible right inguinal hernia." Doc. [40-3]; *see also* Doc. [40-4].

an earlier date because of the increasing pain and size of the hernia. Davis claims that Wexford knew or should have known of the complaints and lawsuits against Dr. Woodall and should have foreseen that Woodall would have deprived Davis of his constitutional rights. *See* Doc. [50] at 3.

The Plaintiff claims that after this lawsuit commenced, the Defendants informed him that he was "going to have an operation" on the hernia. Doc. [43-3] at 20-22. Davis underwent surgery on in November 2011. Thereafter, he moved to dismiss this case on the condition that the Defendants pay the filing fee and/ or court costs. As the Defendants would not agree to that condition, the motion was denied. At this time, both parties move for summary judgment. Davis claims that he should be granted summary judgment because his medical records show the magnitude of his medical condition and the Defendants' failure to properly treat him is deliberate indifference. In response, the Defendants argue that Davis received regular medical treatment and that Dr. Woodall's medical decisions as to the hernia were reasonable. The Defendants additionally assert that Wexford cannot be held liable because the Plaintiff has not identified an unconstitutional policy or practice as the moving force behind his alleged constitutional deprivation. Having considered the parties' arguments, the Court will now determine whether the Plaintiff's constitutional rights were violated and whether summary judgment is proper at this time.

LEGAL AUTHORITY

Summary Judgment

Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

3

trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears burden of "informing the district court of the basis for its motion, and identifying those portions of [the record evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. Once the moving party meets its burden, the nonmoving party must then "come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011).

When ruling on a motion for summary judgment, the court must consider the record evidence and draw all reasonable inferences in the nonmoving party's favor. *Paz v. Brush Engineered Materials, Inc*., 555 F.3d 383, 391 (5th Cir. 2009). However, in the absence of proof, the Court will not assume that the nonmoving party could have proved the necessary facts. *Id*.

Delay or Denial of Medical Treatment

To prevail on a delay and/ or denial of medical care claim under § 1983, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" because "only such indifference [] can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976). "[A] prison official cannot be found liable under the Eighth Amendment...unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 829, 114 S.Ct. 1970, 128 L.Ed. 2d 811 (1970). The official must have known that an inmate faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Id*. at 847. If the risk is obvious, the official's knowledge of that risk may be inferred. *Id.* at 837; *Easter v. Powell,*

4

467 F.3d 459, 463 (5th Cir. 2006).

Davis claims that Dr. Woodall and Wexford were deliberately indifferent to his serious medical needs when they denied and/ or delayed surgical treatment of his chronic hernia condition. However, a prisoner's mere disagreement with medical treatment does not state a valid claim for deliberate indifference. *Castilla v. July*, 470 F. App'x 358, 359 (5th Cir. 2012) (citing *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)). Rather, the Plaintiff must demonstrate that the Defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985).

The following is a brief chronology of the treatment Davis received on his chronic hernia condition. On August 3, 2010, Davis was seen by a doctor at SMCI, Dr. Charmaine McCleave, in response to a sick call request concerning the hernia. Davis had stopped wearing his hernia belt because it was too small. Doc. [49] at 45. Dr. McCleave evaluated Davis and noted that the hernia was easily reduced but kept coming back and that it had grown to 5 centimeters in size since his appointment on July 22, 2010. Doc. [49] at 45. She ordered Davis a new belt and recommended that he meet with Dr. Woodall for a surgery consultation. Doc. 49 at 46. Dr. McCleave also prescribed daily dosages of Naproxen to the Plaintiff and ordered him to stop taking Percogesic.

On October 26, 2010, Davis was seen by Nurse Penny Jemison at SMCI in response to another sick call request. At that time, Davis complained that the hernia had swollen and that the treatment he had been receiving was not working. Doc. [49] at 88-89. Davis was seen again on November 3, 2010, in response to his sick call request regarding increased hernia pain. Doc. [49]

at 93. Medical staff noted that the hernia was reducible, but "just by inmate sitting up[,] hernia easily returns" and that it was "associated with pain, interferes with activity, and activities of daily living." Doc. [49] at 94. On November 16, 2010, Dr. Woodall saw Davis and ordered him to take Acetamin for pain as needed and to take Tylenol for any discomfort he experienced from wearing the hernia belt. Doc. [49] at 101. He did not recommend surgery at that time.

In January 2011, Davis again complained about pain associated with the hernia. Doc. [49] at 113. He advised medical staff at SMCI that the hernia belt was not working and that he was no longer wearing it. Doc. [49] at 114. Dr. Woodall ordered Davis to continue using the belt and prescribed Ibuprofen for his pain. Doc. [49] at 118-119. When Davis was seen in April 2011, medical staff noted that he was not wearing his hernia belt. Doc. [49] at 136. Dr. Woodall prescribed Naproxen and ordered Davis to get an injection.[3] Doc. [49] at 139.

In August 2011, Davis completed another sick call request concerning the hernia. When he was seen by Dr. McCleave, he wore the hernia belt but complained that he needed to be seen by a special doctor. Doc. [49] at 169. Davis was sent to Dr. Woodall who assessed that the hernia was reducible and recommended continued use of the hernia belt. Doc. [49] at 175. In September 2011, Davis complained to medical staff that every time he urinated, the hernia jumped out of place and that he had to push it back in. Doc. [49] at 180. However, at that time, no hernia was visible. Doc. [49] at 181. Dr. Woodall evaluated the Plaintiff and again recommended continued use of the hernia belt. Doc. [49] at 183.

Dr. Woodall testified by sworn affidavit that the Plaintiff was seen on several occasions;

---

[3]The injection is identified as "Other Injection (IM/SC) [CPT-90782]" in the medical records.

that he was given pain medication for his complaints of hernia pain; and that his hernia was always reducible. Doc. [43-2]. Dr. Woodall also testified that, in his opinion, as long as the hernia was not growing and was easily reducible, the benefits of surgery did not outweigh its risks. *Id.* By 2011, the Plaintiff's complaints of pain increased as the hernia grew in size. *Id.* In October 2011, Dr. Woodall recommended to the MDOC that Davis be seen by an outside surgeon. *Id.* MDOC granted this request and on November 28, 2011, surgery was performed on Davis. *Id.* According to Dr. Woodall, the Plaintiff has recovered from the surgery. It is Dr. Woodall's medical opinion that "all necessary and appropriate medical treatment was provided to Mr. Davis." *Id.*

A review of the medical records in this case show that the Plaintiff received extensive medical treatment at SMCI. It appears that Davis's claims against the Defendants are nothing more than a disagreement with treatment. Davis was regularly seen by SMCI medical staff for his hernia and other medical conditions. He was prescribed medication and given a hernia belt. Although the hernia reduced in size with treatment, it continued to grow back. Doc. [49] at 45. The reason for the recurring hernia is unclear; however, the medical records show that Davis often did not wear his hernia belt which was the prescribed method of treatment for his condition. Doc. [49] at 45, 114, 136.

The Plaintiff's mere disagreement with Dr. Woodall's treatment plan does not necessary mean that the Defendants were deliberately indifferent. While he may have preferred to undergo surgery sooner, Davis is not guaranteed preferred treatment by the Constitution.[4] The

---

[4] *See Barksdale v. King*, 699 F.2d 744, 748 (5th Cir. 1983) ("The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves, nor the therapy that Medicare and Medicaid provides for the aged or needy").

7

Constitution only prohibits "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. Davis has not proved that the Defendants delayed or denied medical treatment to him or that they were deliberately indifferent to his medical needs.[5] Therefore, he has not established an Eighth Amendment violation and his claims must fail.

In addition, the Plaintiff's assertion that Wexford is vicariously liable for the actions of Dr. Woodall lacks merit because § 1983 "does not create supervisory or *respondeat superior* liability."[6] Further, Wexford cannot be held vicariously liable because the Court has already determined that the Plaintiff's constitutional rights were not violated. Assuming there had been a constitutional deprivation, Wexford would still not be liable because it was not personally involved[7] in the deprivation nor has the Plaintiff identified an unconstitutional policy of Wexford as the moving force behind the deprivation. *See Mouline v. City of Live Oak, Texas,* 977 F.2d 924, 929 (5th Cir. 1992). Accordingly, to the extent the Plaintiff asserts that Wexford is liable for the acts of Dr. Woodall and any other medical staff who provided medical treatment to him, his claims cannot survive summary judgment.

Based on the above analysis, the Court finds that the Defendants are entitled to judgment as a matter of law. Therefore, it is ordered that the Defendants' Motion for Summary Judgment

---

[5]The record contains over 700 pages of medical records documenting Davis's extensive medical treatment.

[6]*Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002); *see also Powell v. Shopco Laurel Co.,* 678 F.2d 504, 505-506 (4th Cir. 1982) (stating that the plaintiff could not recover against a private state-employed company under § 1983 based on *respondeat superior*).

[7]"A plaintiff bringing a section 1983 action must specify the personal involvement of each defendant..." *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992).

[43] is granted and the Plaintiff's motion [39] is denied. Pursuant to Fed. R. Civ. P. 58, a separate judgment will be entered.

THIS the 20th day of March, 2013.

/s/**MICHAEL T. PARKER**
UNITED STATES MAGISTRATE JUDGE